**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DONGGUAN DEEGO TRADING CO., LTD. | ) ) | |
| Plaintiff, | ) | Case No. 1:25-cv-004962 |
| v. | ) | |
| GIEURY-US, et al., | ) | Honorable John J. Tharp Jr. |
| Defendant. | ) ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF AND ITS COUNSEL'S OBJECTIONS TO DEFENDANTS' PROPOSED ORDER AND REQUEST FOR RECONSIDERATION

Plaintiff's latest filing is yet another example of it violating a court order, disregarding rules and legal standards, and unnecessarily duplicating the proceedings and increasing Defendants' litigation fees. Although titled a request for "Reconsideration," ***not once*** does Plaintiff address the standard for reconsideration. Nor did Plaintiff follow the Court's directive to provide only objections to the amount of fees—not briefing on the award of fees:

> Attorneys' fees are appropriate here given the conduct. And that conduct is clear. It's admitted. ***So I don't think we need any further briefing***. …just submit a proposed order setting out your calculation … I will give plaintiff a week to file ***any objection*** to that proposed order. … ***Seven days to respond thereafter … not to attorneys' fees but to the amount of attorneys' fees that are being requested***.

5/21/25 Hr'g Tr. at 16:8-17:13 (emphasis added). Plaintiff's motion is nothing more than re-argument and its request for reconsideration should be summarily rejected.

Two courts have described Plaintiff's conduct as "circumvent[ion]," "contravention and disregard for the Court's orders," "forum shopping," "inexcusable," and "improper conduct." Dkt. 53; 5/21/25 Hr'g Tr. at 14:19-20, 15:5-14, 16:11-15. This conduct was calculated and intentional, not a mere mistake. Plaintiff's counsel is experienced, appearing in 120+ intellectual property disputes in federal court, including numerous Schedule A proceedings. Ex. 4. Put simply, it knows Schedule A procedure and is intimately familiar with the joinder and relatedness issues associated therewith. Because it is "unjust…for the defendant[s] to have to bear costs and pay attorneys' fees

to correct and address [Plaintiff's] improper conduct," the Court's limited award of attorney fees is an appropriate sanction. 5/21/25 Hr'g Tr. at 16:12-15.

Defense counsel's rates are reasonable and in line with the American Intellectual Property Law Association's Report ("AIPLA Report") of hourly rates in the industry. Indeed, Plaintiff does not contest the reasonableness of the rates. Nor does Plaintiff challenge most of the hours or categories of applicable fees. Instead, Plaintiff focuses on a subset of fees that it perceives to be irrelevant or unreasonable, while ignoring context and the consequences of its own conduct. However, the requested fees were all incurred because of Plaintiff's violation of this Court's Order. The scope of tasks and the amount of time billed is reasonable considering the size of the record across two jurisdictions and scope of injunctive relief sought. The only thing unreasonable here is Plaintiff's continuous misconduct. It failed to mitigate any of Defendants' expenses, evening vigorously pursuing the W.D.Pa. case after Defendants thoroughly discussed Plaintiff's violation, its impact, and sanctions in their Show Cause briefing. Defendants' requested fees should be awarded in full and the order dismissing the Overlapping Defendants with prejudice should stand.

## **ARGUMENT**

### I. Sanctions are Appropriate Because Plaintiff Repeatedly Violated Court Orders, Ignored Local Rules, Made Misrepresentations, and Advanced Frivolous Arguments.

Plaintiff engaged in a pattern of misconduct in this case, including:

- Violation of this Court's related-case Order from the Illinois Action. Dkt. 53; Dkt. 69;

- Violation of this Court's directive regarding the appropriate response to Defendants' Proposed Order. 5/21/25 Hr'g Tr. at 16:8-17:13;

- Violation of W.D.Pa. Local Rule 40 and N.D.Ill. Local Rule 40.4, which govern "relatedness";

- Violation of the electronic service Order. Dkt. 8 (Order); Dkt. 28 at 4 (failing to serve Defendants with sealed case filings); Dkt. 29 at 4 (same); 5/1/25 Hr'g Tr. at 13:1-6 (unrepresented defendant raising Plaintiff's failure to timely serve documents);

- Violation of the Fed. R. Civ. P. and legal standards for reconsideration by moving for

2

reconsideration based on mere re-argument;

- Falsely attesting in an attorney declaration that "Defendants have provided no means by which they may be identified or contacted beyond their Amazon.com and other Marketplace Account names," when each of Defendants' Amazon seller profiles provides a business name and address. Dkt. 4-2 at ¶ 9 (Lei Decl.); Dkt. 28-5 and 28-6 (seller profiles);

- Misrepresenting that the violation was a "mistake," despite intentionally filing in W.D.Pa. because the "particular Northern District of Illinois court [Plaintiff's case was originally assigned to] was not fond of joinder. …[and] the reason that [Plaintiff] removed all the defendants, only left one defendant in that Northern Illinois case, because of the joinder issue." 5/1/25 Hr'g Tr. at 7:10-16, 8:13-15. In its W.D.Pa. briefing, Plaintiff remained silent on the related-case Order and doubled down on its frivolous argument that the cases were not related. Dkt. 37 at 3; Dkt. 38 at 3-4;

- Misrepresenting that counsel was "caught [] off guard" when Judge Bissoon asked about this Court's related-case Order, despite the issue being prominently addressed in the underlying briefing and Defendants requesting sanctions because of Plaintiff's violation. 5/21/25 Hr'g Tr. at 9:23-10:3; Dkt. 28 at 1-4, 23-24; Dkt. 29 at 1-4;

- Misrepresenting that the parties were different in the two cases. 5/1/25 Hr'g Tr. at 7:21-25 (Counsel: "So, in this case, the parties were different"…Court: "Well, there are ten overlapping defendants here so that is not entirely accurate.");

- Misrepresenting that "the 2024 Matter was not pending at the time the Pennsylvania Matter was filed," when, in reality, the WDPa case was filed March 4, 2025 and the Illinois Action was not closed until April 9, 2025. Dkt. 1; Dkt. 73 at 5; and

- Frivolously arguing that the cases were not "related," despite an explicit Court Order and two Local Rules contradicting Plaintiff's strained contention. W.D.Pa. L.R. 40; N.D. Ill. L.R. 40-4; 5/1/25 Hr'g Tr. at 7:4-10:25 (frivolous arguments as to overlapping parties, subsequent case closure, and joinder in support of its relatedness arguments, which the Court rejected); 5/21/25 Hr'g Tr. at 3:24-4:15 (frivolously arguing "it's not very clear" that the cases are related).

The amount of misconduct here more than justifies the Court's sanctions.

**II. Reconsideration is not Warranted.**

It is well settled that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Pharm. Horizons, Inc. v. SXC Health Sol'ns, Inc.*, No. 11-C-6010, 2012 WL 13389511, at *1 (N.D.Ill. July 12, 2012) (quoting *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)). Motions for reconsider are "not a mechanism that allows a party to revisit strategic decisions that

3

prove to be improvident, to make arguments that could and should have been made in prior briefing, to express mere disagreement with a decision of the court, or to reprise or 'rehash' arguments that were rejected." *Terese F. v. Saul*, 396 F. Supp. 3d 793, 794 (N.D. Ill. 2019). Improper motions for reconsideration are often filed, leading the Seventh Circuit to "disfavor[]" them and remind the Bar that judicial opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Id.* at 794-95 (citations omitted).

      **A. Plaintiff's Request for a "Do-Over" Does Not Justify Reconsideration.**

Just like in *Terese*, Plaintiff's motion has no "mention of the phrase 'manifest error of law' or any reference to 'newly discovered evidence'" and is "nothing more than an attempted 'do-over.'" *Id.* at 795. This is not a proper basis for reconsideration.

      **B. No Manifest Error or Newly Discovered Evidence Justifies Reconsideration.**

Under the proper legal standard, the Court did not commit a "manifest error" and there is no "newly discovered evidence" relating to Plaintiff's misconduct. *See Pharm. Horizons*, 2012 WL 13389511, at *1 (defining "manifest error"). Not one, but ***two***, Courts found that Plaintiff intentionally circumvented the related-case Order so that it could refile its case in a forum it perceived to be more favorable. *See* Dkt. 53; 5/21/25 Hr'g Tr. at 14:14-15:15, 17:7-8. This Court also considered, and rejected, counsel's contention that the violation was a mistake. 5/21/25 Hr's Tr. at 5:4-6:15, 14:21-15:4 (Court: "I have seen this series of events play out in other cases, and I have called it out as forum shopping previously. … I have difficulty seeing how that could have been missed. … I'm not convinced that this was a simple mistake either. … So I don't know how that was missed or misconstrued or neglected to take into account the Court's order…"). Given this backdrop, the Court did not commit manifest error.

**III. Defendants' Attorney Fee Request is Reasonable and Supported.**

Plaintiff raises minimal objections to Defendants' fee request. Dkt. 73 at 13-5. As discussed

4

in more detail below, none of these objections merit reduction of the requested fees. All attorney time is a result of the violation and reasonable given the extensive case history, volume of materials filed by Plaintiff, and Plaintiff seeking sweeping injunctive relief (*e.g.* Dkt. 41-1, 15 page proposed Preliminary Injunction Order). While Plaintiff generally claims this time is excessive, it fails to offer or explain what amount of time would have been reasonable under the circumstances.

Moreover, the reasonableness of the fee request is confirmed by what Plaintiff ***does not*** object to. In particular, Plaintiff ***does not object to***: (1) the attorney rates; (2) the applicability of fees in Categories A, C-1, D-1, E, F, G and H; (3) the reasonable apportionment of fees for briefing and hearing preparation attributable to the violation; (4) costs; (5) the reasonableness of Offit's hours in Categories E and F and (5) the reasonableness of Fox Rothschild's hours in Categories A, C-1, D-1, E, F, and H. These fees are described sufficiently by category and supported with time entries, and to the extent necessary, reasonably apportioned to the issues within the scope of the award. *See* 5/21/25 Hr'g Tr. at 19:2-8 (Court requesting "a reasonable segregation"). Accordingly, these unchallenged fees should be awarded in full.

### A. Counsel's Hourly Rates are Reasonable.

Plaintiff lodges no specific objection to the attorney hourly rates, but instead claims Defendants have not satisfied their burden. Dkt. 73 at 11-12. As an initial matter, Plaintiff's failure to contest the rates or offer contrary evidence is an admission that such rates are reasonable. Further, the Court directed Defendants to submit a "proposed order setting out [their] calculation," not "briefing" or "supporting documentation." 5/21/25 Hr'g Tr. at 17:2-13.

In any event, Fox Rothschild's rate of $540 for Lauren Sabol[1] (IP Partner with 14 years of experience) and Marc Smith (litigation Partner with 30+ years of experience), and Offit Kurman's

---

[1] Both Lauren Sabol and Marc Smith billed at discounts of at least 20% from their standard hourly rate. *See Philips*, 2024 WL 216673, at *2 (actual billing rates are the "best evidence" of local market rate).

rates of $525-$580 for Thomas Kramer (intellectual property Counsel with 10+ years of experience and former clerk to the Honorable Leonard P. Stark, D.Del.), $475-$525 for Anthony Potter (litigation Partner with 30 years of experience), and $190 for Robyn St. Hilaire (3L Law Clerk) are reasonable based on average industry rates in the AIPLA Report. Ex. 5 at 32 (75th percentile for average hourly rates for partners with 10-14 years of experience ($668)), 37 (75th percentile for average hourly rates for counsel ($468-$685)). Courts in both W.D.Pa. and N.D.Ill. also have found similar rates to be reasonable. *See, e.g.*, *New Berry, Inc. v. Smith*, No. 18-cv-1024, 2021 WL 5332165, at *1-2 (W.D. Pa. Nov. 15, 2021) (Pittsburgh rates of $360, $540, and $585); *Midwest Athletics & Sports Alliance LLC v. Ricoh USA, Inc.*, 2:19-cv-514, 2023 WL 2989950, at *3 (E.D. Pa. Apr. 18, 2023) ($599 for IP partner and $482 for IP associate in PA based on 2018 AIPLA Report); *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-CV-2648, 2024 WL 216673, at *2 (N.D. Ill. Jan. 19, 2024) ($205-$681 based on AIPLA Report and level of seniority); *Bigfoot 4x4, Inc. v. The Individuals, Corps., Limited Liab. Cos., P'ships, and Uninc. Ass'ns Identified on Schedule A Hereto*, No. 1:22-CV-06758, 2024 WL 1214749, at *3-4 (N.D. Ill. Mar. 21, 2024) ($800 in a Schedule A case).

**B. Counsel's Requested Fees are Reasonable Given the Complexity of the Case.**

Plaintiff raises four objections to Defendants' fee request, each of which is addressed in turn: (1) joinder-related fees (Dkt. 73 at 15); (2) the reasonableness of Offit's briefing and hearing preparation time (*id* at 13-14); (3) the reasonableness of Category G time relating to sanctions and the Proposed Order (*id* at 14); and (4) fees relating to Non-Overlapping Defendants (*id* at 15).

*First*, fees relating to joinder (Categories B, C-2, D-2) are appropriate. As stated by this Court, the fee award includes fees "***directly attributable to the issue of the joinder and naming of the defendants in that case who should not have been named***." 5/21/25 Hr'g Tr. at 18:20-25 (emphasis added). The "predicate" of the related-case Order was Plaintiff defending joinder—

6

which it chose not to do, instead violating the Court's order by refiling in a different jurisdiction in which it perceived to have a more favorable view of joinder. *Id.* at 14:21-15:4.

By dismissing the Overlapping Defendants, rather than briefing joinder, Plaintiff understood that this Court was not going to find joinder proper. 5/1/25 Hr'g Tr. at 7:13-16, 8:13-15, 10:13-15. Therefore, had Plaintiff followed the Court's related-case Order, joinder never would have been briefed by the Overlapping Defendants because Plaintiff would have needed to refile against each Overlapping Defendants separately. Joinder only became an issue for the Overlapping Defendants and YLY Travel because Plaintiff tried to circumvent an unfavorable joinder ruling.

Through Plaintiff's misconduct, joinder became inextricably intertwined with Defendants' arguments about Plaintiff's violation. *E.g.* Dkt. 28 at 7 ("Plaintiff's gamesmanship and forum shopping should not be rewarded. The filing of this Action in this District is a direct result of the court in the Illinois Action questioning the propriety of joinder."). Moreover, the majority of the joinder argument is about the Overlapping Defendants. Thus, the inclusion of YLY Travel's fees is appropriate because YLY Travel would not have briefed being improperly joined with the Overlapping Defendants if the Overlapping Defendants were not in the W.D.Pa. case.

*Second*, Plaintiff's objections to the number of hours have no merit. *See* Dkt. 73 at 13-14. Unsurprisingly, Defendants aggressively defended their rights after Plaintiff obtained an *ex parte* TRO against 100+ unrelated defendants that froze their payment accounts for weeks, many with substantial sums of money unrelated to the accused products, and sought overbroad injunctive relief that would irreparably harm Defendants' business relationship as a marketplace seller if granted (and potentially put Defendants out of business). Staffing three attorneys of different levels and specialties, as Offit did, is not unusual for patent or time sensitive preliminary injunction cases.

Importantly, Schedule A cases are unique and complicated proceedings that few attorneys

7

have expertise in.[2] By the time counsel was retained, the initial filings, *ex parte* TRO, and court orders in W.D.Pa. totaled **more than 2,675 pages**. *See* Dkt. 1-14. Thorough research by defense counsel uncovered the Illinois Action, which had filings of similar magnitude.[3]

Plaintiff's objections mostly focus on Offit's Category C and D hours. Plaintiff conflates numerous categories of work to argue that the hours are unreasonable. However, as shown in the detailed breakdown in Exhibit 1, the hours in each category are reasonable and reflect necessary legal work in the face of a complex preliminary injunction: overall case strategy, analyzing 2,600+ pages of filings, analysis of local court procedure for Schedule A cases, legal research, research and strategy for dissolving the TRO, joint defense coordination, drafting and revising briefing to preclude sweeping injunctive relief, and correspondence with four international clients. For Category D, consistent with Judge Bissoon's Order, Dkt. 11, Defendants anticipated and prepared for a preliminary injunction hearing with the presentation of testimony and evidence. This was not routine briefing or oral argument, but rather vital legal work to ensure that the Defendants' businesses were not shut down. *See* Dkt. 41-1 (overbroad Proposed Preliminary Injunction Order).

Plaintiff also incorrectly compares the hours spent by Offit and Fox Rothschild. As can be seen from the underlying briefing, Offit spent more pages discussing the Illinois Action and joinder than Fox Rothschild.[4] Dkt. 28-29, 31-33. Further, to avoid duplication for the W.D.Pa. hearing, the parties coordinated to have Offit lead the joinder argument and Fox Rothschild lead the invalidity argument. Thus, it is entirely logical and reasonable for Offit's briefing and hearing

---

[2] Typical patent disputes do not involve *ex parte* relief against a mass of international defendants under seal, email service, or the freezing of financial accounts that include revenue for unaccused products.

[3] In a footnote, Plaintiff improperly downplays the magnitude of this case by distilling the Illinois Action to just a four-page docket. Dkt. 73 at n.4.

[4] In Offit's briefing, 6.5 pages were devoted to the Illinois Action and 7.5 pages were related to joinder. Dkt. 70 at 7-8 (Category C-1 and C-2). In Fox Rothschild's briefing, 4.5 pages were devoted to the Illinois Action and 4 pages were related to joinder. *Id.* at 11-12 (Category C-1 and C-2).

preparation hours to be higher than those of Fox Rothschild.[5]

*Third*, all fees associated with obtaining sanctions are reasonable. Since Fox Rothschild is counsel of record for the Defendants and Offit has withdrawn, Fox Rothschild prepared the Proposed Order. Fox Rothschild, therefore, had to analyze Offit's bills, which accounts for more time being spent on the Proposed Order for Gieury and Areyteco.LLC. Unsurprisingly, it was less time consuming for Fox Rothschild to review its own bills, since it already was familiar with all of the time entries. To prepare the Proposed Order, counsel analyzed **nearly 400 time entries** from Offit and Fox Rothschild to determine applicable categories of fees, make adjustments for block billed entries, and apportion time entries encompassing multiple issues to determine the amount of fees directly attributable to Plaintiff's violation. While Offit did not participate in the drafting of the Proposed Order, it provided supporting documentation and engaged in legal analysis related to sanctions earlier in the case in anticipation of the Court awarding sanctions. This legal work was necessary for its clients to evaluate the potential for settlement, which ultimately resulted in Defendants rejecting Plaintiff's extortive settlement demands. And, Offit's earlier work actually reduced the amount of time necessary to brief the sanctions issues because some of the necessary research had already been done. Plaintiff fails to provide any argument for why the number of hours spent by counsel on sanctions and the Proposed Order is unreasonable other than its own, unsupported opinion. *See* Dkt. 73 at 14.

*Fourth*, even though YLY Travel is not an Overlapping Defendant, it also is entitled to a portion of its fees. Similar to the Overlapping Defendants, the requested fees incurred by YLY Travel are all attributable to Plaintiff's violation. If Plaintiff had filed this lawsuit against YLY

---

[5] Fox Rothschild has been counsel in Schedule A proceedings in the past and was familiar with the unique procedure and the boilerplate filings. Counsel's particular experience allowed for efficiencies that reduced its overall hours below what a reasonable number of hours would have been for a typical defense. Gieury and Areyteco.LLC later engaged Fox Rothschild to also benefit from this unique expertise.

9

Travel without the Overlapping Defendants, YLY Travel would not have incurred the expenses relating to at least the Illinois Action, joinder with the Overlapping Defendants, transfer to this Court, the Show Cause Hearings related to the violation, and sanctions. YLY Travel's fees not attributable to the violation have not been included. Also, the fees for other defendants, such as Junyao-US, have already been apportioned out and thus no further reduction is required.

To the extent the Court does not include fees for YLY Travel, this should not impact the award to GRT.Store for the fees that it is jointly responsible for (*i.e.* the entirety of the requested $12,491.26 in the Supplemental Proposed Order). These are fees that GRT.Store would have incurred regardless of whether YLY Travel was in the case and GRT.Store is responsible for the entirety of the joint billings.

### C. Plaintiff's Own Conduct Increased the Fees Incurred by Defendants as a Result of the Violation.

While Plaintiff claims the number of hours spent by counsel are unreasonable, it was actually Plaintiff's own conduct that exacerbated the fees. If the violation was a mistake, the prudent course would have been to dismiss the Overlapping Defendants as soon as Plaintiff became aware of the violation. Instead, after being notified of the violation and that Defendants intended to pursue sanctions because of it (*e.g.* Dkt. 28 at 1-4, 23), Plaintiff continued to vigorously pursue its claims in W.D.Pa., even amending its complaint, filing a separate preliminary injunction motion, and requesting excess pages for its briefing. *See* Dkt. 26, 36, 41.

Even now, Plaintiff continues to unnecessarily increase litigation costs. Rather than providing the requested "objections," Plaintiff submitted 40 pages of briefing and exhibits. Dkt. 73-74. Because of this, the Court construed the briefing as a motion for reconsideration and ordered further briefing. Dkt. 75. Defendants, thus, have been forced to analyze Plaintiff's filings and prepare this response, despite Plaintiff providing no basis for reconsideration or any good faith

objection to the attorney rates, number of hours, or costs incurred by Defendants.

Overall, Defendants seek only approximately 1/3 of their total fees, which is reasonable considering that the main issues in the case were: (1) Illinois Action/joinder/sanctions, (2) patent invalidity, and (3) noninfringement. Furthermore, the total requested award across all of the Defendants is only approximately $80,000, which is a reasonable monetary sanction for Plaintiff's intentional violation. *See* Dkt. 70 at 4 (total fees incurred), 13 (requested fees); Ex. 3.

### IV. Monetary Sanctions and Dismissal with Prejudice are Appropriate under 28 U.S.C. § 1927, 35 U.S.C. § 285, Rule 11, and the Court's Inherent Power.

Multiple grounds justify the imposition of sanctions in this case. By disregarding the Court's order and filing in W.D.Pa. against the Overlapping Defendants, Plaintiff's counsel multiplied the proceedings unreasonably and vexatiously under 28 U.S.C. § 1927. Further, as prevailing parties in an exceptional case, the Overlapping Defendants are entitled to fees under 35 U.S.C. § 285. Rule 11 and the Court's inherent power provide additional support for the Court's monetary sanction, as well as for dismissal with prejudice. Each basis is addressed in turn below.

#### A. Plaintiff Unreasonably and Vexatiously Duplicated the Proceedings under § 1927.

Sanctions under 28 U.S.C. § 1927 apply to "any attorney…who so multiplies the proceedings in any case unreasonably and vexatiously." *See also Kibbons v. Bd. of Ed. of Taft Sch. Dist. 90*, 19-C-1468, 2025 WL 785063, at *4 (N.D. Ill. Mar. 4, 2025) (Vexatious means "subjective or objective bad faith."). "Sanctions are justified where an attorney presses a claim 'without a plausible legal or factual basis and lacking in justification,'…'pursue[s] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound[,]'"…or "acts in an 'objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice.'" *Id*. (citations omitted). Section 1927's purpose "is to deter frivolous litigation and abusive practices by attorneys,…and to ensure that those who created unnecessary costs also

11

bear them." *Kapco Mfg. Co. v. C & O Enterps., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989).

Here, Plaintiff's intentional forum shopping and disregard for this Court's Orders has imposed substantial costs on the Defendants and the Court. The finding by two courts that Plaintiff engaged in intentional forum shopping in circumvention of a court order confirms vexatiousness. The proceedings were multiplied by Plaintiff first filing in W.D.Pa., only to have months of proceedings undone through dissolution of the TRO and transfer to this Court to start over because of Plaintiff's violation. Extra briefing and two Show Cause Hearings have been spent on Plaintiff's violations. A "reasonably careful attorney would have known" that it should follow explicit court orders, local rules, and legal standards. And at the very least, a "reasonably careful attorney would have known" that it should have dismissed the Overlapping Defendants once the violation came to light. Nor did counsel have any "plausible legal or factual basis" for its interpretation of what constitutes a "related case" or to request reconsideration. Plaintiff's counsel's conduct has been, and continues to be, contrary to a "reasonably careful attorney" and demonstrates a "serious and studied disregard for the orderly process of justice." *See, e.g.*, *Kapco*, 886 F.2d at 1490-92 (affirming § 1927 sanctions based on a filing done to avoid a court order and forum shop).

Plaintiff's attempt to downplay its misconduct as "ordinary negligence" and "an unintentional oversight" are inconsistent with the record. Dkt. 73 at 6. If the violation of the related-case Order was an oversight, Plaintiff would have immediately rectified it upon receipt of Defendants' Responses to the Show Cause Order. Plaintiff's failure to do so confirms that the conduct was intentional. Nor does the fact that courts have found purportedly worse conduct[6] to be sanctionable save counsel from the consequences of its actions that fall squarely within § 1927. Dkt. 73 at 7. Prolonged misconduct may justify a larger sanction award, but it is not a prerequisite.

---

[6] Defendants disagree with Plaintiff's contention that it has not made any misrepresentations to the Court. Dkt. 73 at 7; *see supra* Argument Section I.

The Court's narrowly tailored monetary sanction for Defendants' fees and costs directly attributable to Plaintiff's violation and misconduct are justified under § 1927.

### B. This is an Exceptional Case Under § 285.

Under 35 U.S.C. § 285, prevailing parties may be awarded reasonable attorney fees. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). A defendant "need not prevail on the merits to be classified as a 'prevailing party,'" but rather is prevailing if it "effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Rainere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018).

Plaintiff does not contest that the Overlapping Defendants are prevailing parties based on the dismissal with prejudice. Instead, Plaintiff argues a lack of exceptionality because its conduct is supposedly "common practice in patent litigation." Dkt. 73 at 9. Whether forum shopping is "common practice in patent litigation" is irrelevant because the sanctionable conduct is Plaintiff's failure to follow an explicit court order. This conduct, along with its frivolous relatedness and reconsideration arguments, show the weakness of Plaintiff's position and caused it to litigate unreasonably in the hopes of extracting settlements or defaults from Defendants. Such conduct renders this an exceptional case. *See Elec. Comm'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377-78 (Fed. Cir. 2020) (Repeated patent filings to force settlements relevant to exceptionality under § 285.).

### C. Plaintiff's Conduct Violated Rule 11.

Rule 11 can be an appropriate mechanism to impose monetary sanctions and dismissal with prejudice in Schedule A proceedings. *See, e.g.*, *Xped LLC v. The Entities Listed on Ex. 1*, 690 F.

13

Supp. 3d 831, 849-50, 859-61 (N.D. Ill. 2023) (imposing monetary sanctions and dismissing case with prejudice under the court's inherent powers, but noting that the court could impose the same sanctions under Rule 11). Similar to § 1927, the purpose of Rule 11 "is to deter frivolous litigation and abusive practices by attorneys." *Kapco*, 886 F.2d at 1491.

By engaging in forum shopping and not identifying the Illinois Action as a related case, Plaintiff violated Rule 11(b) because the filing was made for an "improper purpose" and its "related case" arguments were not warranted by existing law or any nonfrivolous argument to extend existing law. Fed. R. Civ. P. 11(b). The safe harbor of Rule 11 was sufficiently met in this case because Plaintiff was aware of its violation through Defendants' Responses to the Show Cause Order, yet "stood by its allegations" about relatedness and refused to dismiss the Overlapping Defendants. *Xped*, 690 F. Supp. 3d at 847-49 (strict compliance with Rule 11 is not required in cases involving preliminary relief); Dkt. 28 at 1-4, 23-24; Dkt. 29 at 1-4; Dkt. 37 at 3; Dkt. 38 at 3-4. Rule 11, therefore, provides sufficient justification for the Court's monetary sanction and dismissal with prejudice. *See Kapco*, 886 F.2d at 1490-92 (affirming sanctions under Rule 11 where party filed a second complaint to avoid a court order and shop for a different forum).

Plaintiff challenges application of Rule 11 only on the basis of its infringement claims allegedly not being frivolous on the merits, as evidenced by Judge Bissoon granting a TRO. Dkt. 73 at 9. However, an *ex parte* TRO has minimal bearing on the true merits of a case because the defendants have not appeared or raised any defenses. Further, as soon as Judge Bissoon found out about Plaintiff's violation of the related-case Order and rejected Plaintiff's frivolous relatedness arguments, she dissolved the TRO. Dkt. 53.

### D. The Court's Use of its Inherent Power to Sanction Plaintiff is Appropriate.

"A court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on

14

the court, delay, disruption, or 'hampering enforcement of a court's order.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). "[D]ismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary." *Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022). Thus, monetary sanctions and dismissal with prejudice are warranted at least for Plaintiff's intentional violation of the Court's Order, bad faith forum shopping, misrepresentations, vexatious litigation tactics, and fraud on the court. *See supra* Argument Section I; *see also* Fed. R. Civ. P. 41(b).

Here, just as in *Xped*, 690 F. Supp. 3d at 859-61, the award of costs and fees serves to redress the harm to Defendants from Plaintiff's improper conduct and deter future misconduct by Plaintiff and its counsel. Dismissal with prejudice, on the other hand, serves as a punishment to Plaintiff and as a deterrence to other potential wrongdoers. Such sanctions are also appropriate to "incentivize" Schedule A defendants to appear, as Defendants did here, because in these proceedings, it is "difficult to detect and sanction misconduct without the participation of attorneys on the other side." *Id.* at 859-60. Sanctions "incentivize" appearances "because it makes fighting rather than giving up a more financially viable choice." *Id.*

**V. Defendants are Entitled to the Additional Fees Incurred for this Briefing.**

The fees and costs incurred by Defendants for this briefing are directly attributable to Plaintiff's violation. Thus, they should be included in any award. Defendants have concurrently filed a Supplemental Proposed Order and Exhibit 3 detailing these additional fees and costs.

**VI. Any New Arguments Raised by Plaintiff in its Reply Should Be Ignored.**

Based on Plaintiff's litigation conduct to date, Defendants anticipate that Plaintiff may attempt to raise new arguments in its reply in an attempt to justify reconsideration of the sanction order or reduction of Defendants' fees and costs. Any such arguments that could have been raised at the hearing or in its motion are untimely and should not be considered.

Dated: June 19, 2025                                    Respectfully submitted,

                                            By:     /s/ Lauren Sabol
                                                      Marc C. Smith (#6189574)
                                                      FOX ROTHSCHILD
                                                      321 N. Clark Street, Suite 1600
                                                      Chicago, Illinois 60654
                                                      O - (312) 517-9200    F – (312) 517-9201
                                                      MCSmith@foxrothschild.com

                                                      Lauren B. Sabol (*pro hac vice*)
                                                      FOX ROTHSCHILD
                                                      BNY Mellon Center
                                                      500 Grant Street, Suite 2500
                                                      Pittsburgh, Pennsylvania 15219
                                                      O – (412) 394-5568    F – (412) 391-6984
                                                      LSabol@foxrothschild.com

                                                      *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I, Lauren Sabol, hereby certify that on June 19, 2025, I caused the foregoing document to be filed electronically with this Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document, upon interested parties.

      By: */s/ Lauren Sabol*
           Lauren Sabol