IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONGGUAN DEEGO TRADING CO., LTD., <br><br>Plaintiff, <br><br>v. <br><br>JUNYAO-US et al., <br><br>Defendants. | No. 25 C 4962 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

This case combines an all-too-common practice with a uniquely nefarious twist. When the Court ordered the plaintiff, Dongguan Deego Trading Company, Ltd., to file a supplemental brief defending its decision to join a score of seemingly unrelated defendants in a single online-infringement action, it strategically folded, voluntarily dismissing all defendants except one while preparing to re-file in a court more favorable to joinder. Such blatant forum shopping has become a regrettable staple of "Schedule A" cases, mass-counterfeit lawsuits against semi-anonymous online retailers who rarely appear and thus provide unprecedented leeway for plaintiffs to file, amend, dismiss, and re-file until they find a judge willing to permit joinder of the previously dismissed defendants in a single action. Before Dongguan could re-file, however, the Court entered an order requiring the plaintiff to mark any future case that included a voluntarily dismissed defendant as "related" on its civil cover sheet. The plaintiff violated that order, re-filing in the Western District of Pennsylvania without a relatedness designation.

When the Pennsylvania court discovered the violation, it appropriately transferred the case back to this Court. This Court then ordered attorneys' fees and dismissal with prejudice as a sanction for the plaintiff's misconduct. Because that sanctions order is amply justified under at

least three independent lines of authority—28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and the Court's inherent authority—the plaintiff's motion to reconsider the entry of sanctions is denied. Moreover, the Court finds the defendants' calculation of attorneys' fees to be reasonable, dismissing the plaintiff's objections to the contrary.

## BACKGROUND

In December 2024, Plaintiff Dongguan Deego Trading Co., Ltd., represented by counsel Getech Law LLC, sued dozens of online retailers for patent infringement, alleging that they had counterfeited Dongguan's patented backpack design (the "original action"). *Dongguan Deego Trading Co., Ltd. v. Schedule A* ("*Dongguan I*"), No. 24-cv-12944 (N.D. Ill. filed Dec. 17, 2024). Shortly thereafter, the Court directed the plaintiff to file a memorandum explaining why joinder of all named defendants was proper under the America Invents Act, 35 U.S.C. § 299, despite the variety of different products sold. *See Oakley, Inc. v. Schedule A*, No. 21-cv-00536, 2021 WL 308882, at *1-2 (N.D. Ill. Jan. 30, 2021). Instead, the plaintiff opted to voluntarily dismiss all defendants but one. *See* Second Am. Schedule A, *Dongguan I*, ECF No. 16. The Court then entered the following order:

> On the grounds set forth in the motion, plaintiff's ex parte motion for TRO . . . is granted. . . . Plaintiff is advised that should it seek to reassert the same claim against any of the original defendants in this case, it must file a new case and indicate on the civil coversheet that the case is related to this case.

Minute Entry, *Dongguan I*, ECF No. 18.

The plaintiff did not comply. Filing a new action in the Western District of Pennsylvania, it renamed 10 of the defendants it had voluntarily dismissed (the "overlapping defendants") without marking the cases as related. Civil Cover Sheet, *Dongguan Deego Trading Co., Ltd. v. Junyao-US, et al.* ("*Dongguan II*"), No. 25-cv-00321 (W.D. Pa. Mar. 4, 2025), ECF No. 2-1.

After the plaintiff successfully obtained a temporary restraining order in the Pennsylvania action, several overlapping defendants appeared and moved to dissolve the TRO. Mots. to Dissolve TRO, *Dongguan II*, ECF Nos. 31, 33. The court granted the motions, finding that the "Plaintiff [had] filed the instant action . . . in an attempt to circumvent Judge Tharp and litigate the case in a (perceived) more favorable forum." Order 1, *Dongguan II*, ECF No. 53. The court found the plaintiff's conduct to be "in direct contravention of Judge Tharp's instructions" to "indicate on the civil cover sheet that the case is related," and it ordered that the case be transferred back to the Northern District of Illinois. *Id.*

Following reassignment, this Court held a hearing on May 21, 2025. *See* Tr. of Proceedings ("Tr."), ECF No. 71. During the hearing, counsel for the plaintiff conceded that it had re-filed in the Western District of Pennsylvania "because . . . that district court has a . . . favorable approach in terms of joinder." *Id.* at 9:3-10. The Court agreed, adding that "this was clearly an episode of . . . not just forum shopping but . . . also contravention and disregard for the Court's orders." *Id.* at 15:11-14. The Court also found, as a factual matter, that the plaintiff's failure to designate the cases as related was not a "simple mistake." *Id.* at 14:21. Because the plaintiff had made a deliberate, strategic decision not to brief joinder and instead live with the consequences of voluntarily dismissal, the Court found it unlikely that its order had been simply "missed or misconstrued or neglect[fully] [not] take[n] into account." *Id.* at 15:2. Accordingly, the Court found that "a sanction is appropriate" to compensate the overlapping defendants for time spent litigating a case that had been filed in violation of a direct court order and to deter similar acts of blatant forum shopping. *Id.* at 15:1; *see id.* at 15:5-16:15. Accordingly, the Court ordered that the case be dismissed with prejudice as to all remaining overlapping defendants and that the defendants be awarded any and all "attorneys' fees that are directly attributable to having to litigate

the propriety of the filing of the case before [the Western District of Pennsylvania]." *Id.* at 16:8-10.

Following the hearing, counsel for the overlapping defendants ("the defense counsel") submitted a proposed award reflecting their calculated expenses. In response, the plaintiff filed the objections and motion for reconsideration now under review. Pl.'s Counsel's Obj. to Def.'s Proposed Order and for Reconsid. ("Pl. Mot."), ECF No. 73.

1. **Motion to Reconsider**

The plaintiff's motion for reconsideration makes no mention of the standard by which such motions are reviewed. That is unsurprising, given that reconsideration is an "extraordinary remed[y] reserved for the exceptional case." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function. . . ." (quotation marks omitted)). To prevail, the plaintiff must either "present newly discovered evidence" (it has none) or "establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard [for], misapplication [of], or failure to recognize controlling precedent.'" *Id.* (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

The Court's sanctions order was not entered in "wholesale disregard [for], misapplication [of], or failure to recognize controlling precedent." *Id.* (quotation marks omitted). To the contrary, it was a reasonable application of three independent sources of authority: 28 U.S.C. § 1927, Federal Rule of Civil Procedure 11, and the Court's inherent authority.

   a. **28 U.S.C. § 1927**

Section 1927 permits courts to award reasonable attorneys' fees and costs against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C.

§ 1927; *see also Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992) (the term "vexatious" in § 1927 means "either subjective or objective bad faith"). Such awards are appropriate when an attorney behaves in an "objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (quotation marks omitted); *see also Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (sanctions are warranted when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound"). That description matches the plaintiff's conduct to a tee. By blatantly violating a direct court order in an intentional, strategic attempt to manipulate procedural rules (in this case Rule 41(a)(1)(A)(i) dismissal) to curate a favorable forum, the plaintiff at the very least exhibited "reckless and indifferent" disregard for the law. *Kotsilieris*, 966 F.2d 1181 at 1185. That warrants § 1927 sanctions. *Id.*; *see also In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985).

    **b. Rule 11**

Sanctions are also appropriate under Rule 11. That rule prohibits attorneys from submitting court filings "for any improper purpose" and from taking positions not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)-(2). The plaintiff's representation, communicated in its civil cover sheet, that the Pennsylvania action was unrelated to the original action was not "objectively warranted by existing law or a good faith argument for [its] modification." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987) (quotation marks omitted). For starters, the claim contradicted the Court's explicit finding of relatedness in the original action. Minute Entry, *Dongguan I*, ECF No. 18. Moreover, the plaintiff flatly violated Local Rule 40 of the Western District of Pennsylvania, which states that "civil actions are deemed related when an action filed . . . involves the same issue of fact, or it grows out of the same transaction as another

5

action, or involves the validity or infringement of a patent involved in another action." W.D. Pa. Civ. R. 40(D)(2) (Nov. 1, 2016).

The plaintiff maintains that reasonable minds could differ as to whether two cases with overlapping defendants are related. Regardless, Rule 11 sanctions would still be appropriate. Assume—contrary to this Court's position—that the mere inclusion of overlapping defendants was insufficient to render the Pennsylvania case related to the original action. Even if that were so, the simple fact that an order in the original case directly affected how litigants could procedurally initiate the Pennsylvania case would nonetheless establish an undeniable relationship. The plaintiff offers no legal justification for treating as unrelated two cases with *both* overlapping defendants and an overlapping order. Rule 11 supports dismissal of the overlapping defendants with prejudice, along with attorneys' fees.[1]

   c. **Inherent Authority**

Sanctions are further justified as an exercise of the Court's inherent authority. District courts "possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quotation marks omitted). That authority "includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* "A

---

[1] In general, a party must file and serve a motion seeking sanctions under Rule 11. *See* Fed. R. Civ. P. 11(c)(2). The plaintiff has waived any argument that this safe harbor provision applies by not including it in its briefs. Regardless, when "[t]he preliminary posture under which the sanctionable conduct occurred prevented strict compliance with Rule 11," courts may relax the rule's procedural requirements when necessary to adequately "punish and deter misconduct with respect to the representations and arguments made in support of the TRO." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 847, 849 (N.D. Ill. 2023). That is particularly true where, as here, the party seeking sanctions provided full and timely notice of the misconduct at issue. *See* Resps. to Order to Show Cause, *Dongguan II*, ECF Nos. 28, 29.

court may use its inherent authority to sanction those who show 'willful disobedience of a court order,' act in 'bad faith, vexatiously, wantonly, or for oppressive reasons,' for fraud on the court, delay, disruption, or 'hampering enforcement of a court's order.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

The plaintiff's flagrant manipulation of judicial fora to sidestep adverse joinder rulings, coupled with its reckless (at a minimum) disregard for the Court's explicit order designed to prevent such manipulation, warrants attorneys' fees and dismissal of the overlapping defendants with prejudice under Rule 11. *See Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) ("Dismissal [pursuant to the Court's inherent authority] can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false."). Though dismissal with prejudice is a "harsh sanction," the Court finds it appropriate in this case in light of the plaintiff's "clear record of . . . contumacious conduct." *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018). Even if the plaintiff had simply overlooked the related cases when initially filing, it forfeited any pretense of a good-faith accident when it refused to voluntarily dismiss the action—or even the overlapping defendants—after the defense counsel notified the plaintiff of its mistake.

The need to deter future misconduct further justifies the sanction. Violations of court orders that span multiple jurisdictions are difficult to detect, particularly in Schedule A cases where forum shopping is rampant and defendants rarely appear. Such misconduct results in a disproportionate drain on court resources, outsized harm on non-appearing defendants, and, therefore, an enhanced need for robust deterrence. That counsels in favor of a stiff sanction in this rare instance where the misconduct was identified and challenged.

Because the Court's sanctions ruling was a reasonable exercise of the discretion conferred under § 1927, Rule 11, and the Court's inherent authority, the ruling was not entered in "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606.[2] The motion for reconsideration is denied.

### 2. Objections to Attorneys' Fees

As an alternative to reconsideration, the plaintiff raises a number of discrete objections to the amount of attorneys' fees requested by the defense counsel in its proposed order. The Court addresses each in turn.

#### a. Rates

Plaintiff claims that *any* fees are unwarranted because the defense counsel failed to carry its burden of proving that its rates reflected the prevailing market rate. Pl. Mot. 11-12 (citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993)). That argument fails. While defense counsel did not attach briefing or documentary support for its rates to its proposed order (it was not asked to), defense counsel did provide extensive documentation in its response brief. Defs.' Resp. to Plaintiff's Objs. and Mot. for Reconsid. ("Defs. Resp.") 5-6, ECF No. 76.

---

[2] Contrary to the defendants' assertion, sanctions would not be warranted under 35 U.S.C. § 285. That provision authorizes reasonable attorneys' fees to the "prevailing party" in an "exceptional" patent case. 35 U.S.C. § 285. "[T]he unreasonable manner in which th[is] case was litigated"—*i.e.*, through wanton forum shopping in direct violation of a court order—renders this case exceptional. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). But the defendants are not "prevailing parties" within the meaning of § 285. To "prevail," for purposes of federal fee-shifting statutes, a party must effect a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 83 (2007). Dissolving a temporary restraining order does not materially alter a legal relationship; it simply returns the parties back to their original status pre-litigation. *See id.* For that reason, the Court hesitates to find that § 285 supports sanctions—even though the plaintiff likely forfeited any argument to the contrary by not disputing the defendants' status as prevailing parties in its briefing.

Plaintiff's reply brief did not challenge the defendants' figures, which in any case reflect prevailing market rates for attorneys of equivalent ability and experience.

### b. Number of Hours Reported by Offit Kurman in the Pennsylvania Action

The plaintiff asserts that defense counsel Offit Kurman reported an unreasonable number of hours devoted to litigating this matter. Pl. Mot. 13-14. The Court disagrees. While the firm admittedly spent a substantial amount of time representing the defendants (as many as 88.9 hours responding to the Preliminary Injunction and moving to dissolve the TRO in the Pennsylvania action, *id.* at 13), that amount was reasonable in light of the case's complexity. By the time Offit Kurman filed an appearance, the plaintiff had already filed in two jurisdictions, obtained a TRO freezing the assets of over 100 defendants, moved for a sweeping preliminary injunction ("PI"), and were preparing for a court-scheduled show-cause hearing on why the PI should not issue. *See* Notice of Appearance, *Dongguan II*, ECF No. 18. At that point, total filings in the Pennsylvania proceeding alone numbered over 2,600 pages. Defs. Resp. 7-8. Marshalling a defense in that context demanded a significant expenditure of time and resources. Those demands were magnified by the need to coordinate a joint defense with co-counsel, communicate with four international clients, and become familiar with the intricate and singular procedures of a Schedule A case—a daunting task for anyone lacking extensive prior experience. *Id.* at 8. Given the stakes—the potential loss of tens of thousands in frozen assets and an irreparably damaged relationship with retailers—it was sensible for Offit Kurman to devote significant time to a zealous defense.

### c. Number of Hours Reported by Fox Rothschild in the Instant Action

The plaintiff maintains that Offit Kurman's co-counsel, Fox Rothschild, spent an unreasonable amount of time preparing the proposed order in the instant case. Pl. Mot. 14. Once again, the Court is not persuaded. The proposed order numbers 38 pages of text, detailed calculations of attorneys' fees, and dense itemized spreadsheets. *See* Proposed Order, ECF No. 70.

9

Because Offit Kurman had withdrawn, Fox Rothschild had to prepare that order without assistance, which required analyzing nearly 400 billing records (many from a different firm) to determine which fell within the scope of the Court's sanctions order. The hours spent on that task appropriately reflected its difficulty.

### d. Representation of YLY Travel

The plaintiff argues that the fees award should be reduced because one of Fox Rothschild's clients, YLY Travel, was not an overlapping defendant. Pl. Mot. 15. While that may be true, the Court's sanctions order was not limited to the representation of only overlapping defendants. The Court awarded any and all "attorneys' fees that are directly attributable to having to litigate the propriety of the filing of the case before [the Western District of Pennsylvania.]" Tr. 15-16. That included tasks that benefitted YLY Travel but would not have been necessary had the plaintiff omitted the overlapping defendants from the Pennsylvania action (or marked them as related as instructed, thus triggering a transfer). For instance, defense counsel had to brief YLY's joinder with the overlapping defendants, research the Illinois action, and oppose the PI motion on the grounds of improper joinder and violation of the Court's order. Because all tasks reflected in the proposed order—including those that incidentally benefitted YLY—flowed directly from the plaintiff's decision to name overlapping defendants in the Pennsylvania case without marking it as related, the Court finds that the attorneys' fees award was properly calculated.

### e. Hours Devoted to Litigating Joinder

The plaintiff seeks to exclude hours devoted to the joinder issue, contending that it would have been litigated regardless of whether it had marked the Pennsylvania action as related. That argument borders on bad faith. In the original action, the Court ordered supplemental briefing on joinder from the plaintiff *alone* as a precondition of obtaining an *ex parte* TRO. The clear (and admitted, *see* Tr. *Id.* at 9:3-10) purpose of re-filing in Pennsylvania was to avoid an adverse joinder

10

ruling that the plaintiffs anticipated the Court would issue in that preliminary phase—before any defendant had filed an appearance. Thus, if the plaintiffs had marked the Pennsylvania action as related, the case would have been transferred, the plaintiff would have been required to brief joinder as instructed, and the issue would have been decided on an *ex parte* basis. No defendant or defense counsel would have incurred costs. The fact that they did is directly attributable to the plaintiff's violation of the court order.

### f. Hours Devoted to Litigating Objections to Proposed Order

In the same vein, the plaintiff opposes attorneys' fees for time spent responding to its objections and motion for reconsideration. Reply in Supp. of Pl.'s Objections and Mot. for Reconsideration 10, ECF No. 77. Once again, those fees fall squarely within the Court's sanctions order; they are "directly attributable" to having to litigate the plaintiff's improper filing in the Western District of Pennsylvania. *See* Tr. 15-16. Had the plaintiff not violated the Court's order, no sanctions award would have been issued, no proposed order solicited, and no objections filed. The fact that the defendants voluntarily chose to seek sanctions—like the fact that the defendants voluntarily chose to challenge the TRO—is immaterial. In both cases, the plaintiff's sanctionable misconduct forced their hand.

\*   \*   \*

Four independent lines of authority confer ample discretion upon the Court to dismiss the overlapping defendants with prejudice and award costs and attorneys' fees stemming from the plaintiff's misconduct. Moreover, none of the plaintiff's objections to the specific fee amount contained in the proposed order hits the mark. The defendants are therefore directed to file an updated, final proposed order reflecting the costs incurred in responding to the plaintiff's objections and motion for reconsideration. Those objections are overruled, and the motion denied.

Dated: July 31, 2025

John J. Tharp, Jr.
United States District Judge